IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION |
| v. : | |
| : | No. 06-23 |
| SHAMONE KENNEDY : | |

**MEMORANDUM AND ORDER**

**Schiller, J.**                                                                                                                    **June 15, 2007**

Defendant Shamone Kennedy is charged under a six-count superseding indictment with two counts each of possession of cocain base with intent to distribute, possession of firearms in furtherance of a drug trafficking crime, and possession of firearms by a convicted felon. *See* 21 U.S.C. § 841(a)(1); 18 U.S.C. §§ 924(c) and 922(g)(1). Presently before the Court is Defendant's motion to suppress evidence obtained pursuant to a search of a house and a subsequent search of a car. For the reasons set forth below, Defendant's motion is denied.

**I.      BACKGROUND**

On April 3, 2007, Defendant filed a motion to suppress evidence obtained from two separate searches: (1) a search of the house located at 369 S. First Ave., Coatesville, Pennsylvania; and (2) a search of a Toyota Camry. The Court held a suppression hearing on May 30, 2007. Based on the parties' submissions and the testimony presented at the hearing, the Court makes the following findings of fact and conclusions of law.

**II.     FINDINGS OF FACT**

On June 27, 2005, police arrested two minors in connection with stolen firearms in Modena, Pennsylvania. (Aff. in Supp. of Application for Warrant to Search House.)  One of the minors told Detective Quinn, a member of the Coatesville City Police Department, that some of the firearms had been sold for cash and drugs to a man named "Tex" at 369 S. First Ave. (*Id.*)  Detective Quinn later interviewed Clayton Woodward, who corroborated the minors' story and described certain physical attributes of the location where the sale took place. (*Id.*)  On the basis of the information he obtained during these interviews, Detective Quinn applied for a warrant to search the house located at 369 S. First Ave. (*Id.*)  The warrant listed the targets of the search as eight guns, cocaine, and crack cocaine. (*Id.*)  The warrant was issued, and the search was executed that same day. (May 30, 2007 Tr. at 8.)  During the search, the police found guns, drugs, and personal effects belonging to Defendant. (*Id.* at 9.)

The police identified Defendant as "Tex," and a federal warrant for his arrest was issued on January 18, 2006.  Defendant was arrested later that day on the 700 block of E. Lincoln Highway in Coatesville. (*Id.* at 13, 43; Aff. in Supp. of Application for Warrant to Search Car [hereinafter Aff. for Car Search] ¶ 3.)  The police conducted a search incident to arrest of Defendant's person and uncovered a key to a Toyota Camry. (Aff. for Car Search ¶ 4.)  Shortly after the arrest, the police, who had information that Defendant was driving a Toyota Camry earlier that day, located the car a few blocks away from the site of Defendant's arrest.[1] (Tr. at 43.)  The police learned that the car was owned by Kulp Car Rentals ("Kulp") and contacted the company. (*Id.* at 45; Aff. for Car Search ¶ 4.)  After Kulp asked the police to secure the vehicle, the police towed it to a police-controlled lot.

---

[1] It is unclear exactly how far away from the location of the arrest the car was found.

(Aff. for Car Search ¶ 4.)  Although the police did not know it at the time they towed the car, Defendant had permission from one of the authorized drivers to use it.[2]  (Aff. for Car Search ¶ 6; Tr. at 69-70.)

Once in police custody, an inventory search of the car was performed on all areas except the locked glove compartment.[3]  (Aff. for Car Search ¶ 4.)  During the inventory search of the trunk police recovered a partially disassembled firearm, men's clothing, and a receipt bearing Defendant's name from a clothing store.  (*Id.* ¶ 5.)  After the search, an attorney for Courtney Fields, one of the authorized drivers listed on the rental agreement, alerted police to the possibility that there might be drugs in the car.  (*Id.* at 6.)  The police brought in a K-9 unit, which responded to the trunk area and rear passenger door of the vehicle.  (*Id.* ¶¶ 6-7.)  Based on the gun found in the trunk during the inventory search and the drug dog's alert, Detective Farley prepared an affidavit in support of an

---

[2] Evidence regarding the potentially crucial fact of whether Defendant had permission to use the car is sorely lacking.  Detective Farley states in his affidavit that an attorney for Courtney Fields, one of the authorized drivers listed on the rental agreement for the Camry, told Quinn that Fields had given Defendant permission to drive the car.  (Aff. for Car Search ¶ 6.)  Detective Quinn also provided double hearsay testimony to this effect during the suppression hearing.  (Tr. at 69-70.)  However, in her only sworn testimony on this issue before the grand jury, Fields stated that she did *not* give Defendant permission to drive the car.  Concerned with the possibility of perjury, the Government declined to have Fields testify during the suppression hearing.  As a result, the only evidence before this Court is that Defendant had permission from Fields to drive the car.

[3] During the suppression hearing Detective Murrin stated that he believed the inventory search was conducted on the scene.  (Tr. at 61.)  Detective Farley, however, stated in his affidavit that "[o]fficers towed the vehicle to their lot, *where the contents of the car were inventoried . . . .*"  (Aff. for Car Search ¶ 4.) (emphasis added).  The Court credits Detective Farley's account of the events as provided in the affidavit.  Detective Murrin had no first hand knowledge of the inventory search of the car and was testifying about events that took place approximately sixteen months earlier.  Detective Farley, on the other hand, prepared his affidavit contemporaneously with the events at issue.  Accordingly, the Court credits Detective Farley's account and concludes that the car was not inventoried until after it was at the police lot.

application for a warrant to search the car. (*Id.*) Magistrate Judge Peter B. Scuderi issued the warrant, and the resulting search of the car's glove compartment revealed drugs and another gun. (Tr. at 53.)

### III.   CONCLUSIONS OF LAW

The movant generally bears the burden of proving that evidence should be suppressed. *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995) (*citing United States v. Acosta*, 965 F.3d 1248, 1256 n.9 (3d Cir. 1992)). Once the defendant has established a basis for his motion, however, the burden shifts to the government to establish the reasonableness of the search. *Id.* (*citing United States v. McKneely*, 6 F.3d 1447, 1453 (10th Cir. 1993)). On the specific issue of standing to contest the legality of a search – whether the individual had a reasonable expectation of privacy in the place searched – the burden falls on the person asserting the Fourth Amendment right. *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980).

#### A.   Search of the House

Defendant objects to the search of the house located at 369 S. First Ave. on the ground that there was insufficient evidence to support the magistrate judge's decision to issue the warrant. Because Defendant has not established a reasonable expectation of privacy in the home, he cannot object to the legality of the search. Even assuming, however, that Defendant has standing to challenge the search of the house, there is a substantial basis in the affidavit to support the magistrate judge's decision. Accordingly, suppression is improper.

##### 1.   *Defendant Lacks Standing to Contest the Search of the House*

The Fourth Amendment protects individuals from "unreasonable searches and seizures" of

their person or property. U.S. CONST. amend. IV. To contest the legality of a search, an individual must establish both a subjective expectation of privacy in the place searched and that such expectation is objectively reasonable. *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). Defendant has utterly failed to establish any connection to the house located at 369 S. First Ave. sufficient to support a reasonable expectation of privacy. He was not the lessee; nor did he claim, either in his motion papers or at the suppression hearing, to have lived in the house or been an overnight guest. *See id.* While it is true that the police recovered evidence connected to Defendant in the house, none of it establishes that he was residing there or staying overnight.[4] Indeed, the evidence adduced during the suppression hearing, including testimony that as many as eight individuals were connected to the three bedroom house, suggests that the house was merely being used to conduct an illegal drug ring. (Tr. at 28.) Under such circumstances, no reasonable expectation of privacy exists. *Carter*, 525 U.S. at 88.

        2.        *A Substantial Basis Exists to Support the Issuance of the Warrant*

Assuming, *arguendo*, that Defendant has standing to contest the search, suppression is still unwarranted. When a search is conducted pursuant to a warrant, as in this case, the warrant should be upheld if there is a "substantial basis" for the judicial officer's determination that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). Detective Quinn's affidavit included information from a minor that the minor was involved in the sale of stolen firearms to an individual

---

[4] For example, the police recovered a piece of Defendant's mail during the search, but it was not addressed to 369 S. First Ave. (Tr. at 10, 34.) This case is therefore easily distinguishable from *United States v. Johnson*, 524 F. Supp. 199, 202 (D. Del. 1981), cited by Defendant, which found a reasonable expectation of privacy where the defendant had an agreement with the owner to use the property, had papers delivered there, possessed a key, and was identified by multiple individuals as being a resident of the house. None of the key facts supporting a reasonable expectation of privacy in *Johnson* are present here.

located inside 369 S. First Ave. This information was corroborated by Clayton Woodward, who the minor claimed as an accomplice. These facts plainly provide a substantial basis for the judicial officer's determination that probable cause existed to support issuance of the warrant.

### B. Searches of the Car

#### 1. Defendant Has Standing to Contest the Searches of the Car

As mentioned above, to contest the legality of a search an individual must establish both a subjective expectation of privacy in the place searched and that such expectation is objectively reasonable. *Carter*, 525 U.S. at 88. The Third Circuit has not addressed standing in the context of rental cars driven by unauthorized drivers. In a case involving a borrowed car, however, the Third Circuit noted that "whether the driver of a car has the reasonable expectation of privacy necessary to show Fourth Amendment standing is a fact-bound question dependent on the strength of his interest in the car and the nature of his control over it; ownership is not necessary." *United States v. Baker*, 221 F.3d 438, 442 (3d Cir. 2000).

The circuits that have addressed the issue are split. The Fourth, Fifth, and Tenth Circuits have adopted a bright-line rule, holding that if an individual is not listed on the rental agreement, then he does not have a reasonable expectation of privacy in the rented vehicle. *See United States v. Thomas*, 447 F.3d 1191, 1197 (9th Cir. 2006) (collecting cases). Even an unauthorized driver who had permission from an authorized user has no legitimate expectation of privacy in the car. Despite the laudable qualities of this standard – including ease of applicability – it is a blunt instrument, particularly in an area of law that usually calls for a fact-specific analysis.

Perhaps for this reason, other circuits have decided against applying this test. For example, the Eighth and Ninth Circuits have adopted a modified bright-line rule that allows standing to

unauthorized drivers who can show permission to use the car from an authorized driver. *Id.* (*citing United States v. Muhammad*, 58 F.3d 353, 355 (8th Cir. 1995)). Yet another approach examines the totality of the circumstances and considers a range of factors including: "(1) whether the defendant had a driver's license; (2) the relationship between the unauthorized driver and the lessee; (3) the driver's ability to present rental documents; (4) whether the driver had the lessee's permission to use the car; and (5) the driver's relationship with the rental company . . . ." *Id.* (*citing United States v. Smith*, 263 F.3d 571, 586 (6th Cir. 2001).

It is an open question in the Third Circuit whether unauthorized drivers can ever establish a legitimate expectation of privacy in a rental car. The framework set forth in *Baker*, however, may be read as an implicit endorsement of either the modified bright-line rule or the totality of the circumstances test. In *Baker*, the court noted that a "fact-bound" inquiry assessing "the strength of [the driver's] interest in the car and the nature of his control over it" is necessary in determining whether someone who borrowed a car had a reasonable expectation of privacy in it. 221 F.3d at 442. Likewise, in denying standing to a passenger in a rented truck, a district court in the Western District of Pennsylvania concluded that the passenger was not an authorized driver, and, moreover, there was no evidence that he had ever driven the truck or had the authorized driver's permission to do so. *United States v. Yamba*, 407 F. Supp. 2d 703, 716 (W.D. Pa. 2006). The fact that the court in *Yamba* discussed factual matters beyond the passenger's status as an unauthorized driver suggests that it also predicted that a more nuanced test than the bright-line rule applies within the Third Circuit.

Assuming the Third Circuit would utilize either the modified bright-line rule, under which unauthorized drivers of rental cars have standing to contest a search if they have the permission of an authorized driver, or the totality of the circumstances test, the evidence here supports the

7

conclusion that Defendant had a reasonable expectation of privacy in the Camry. Defendant had a license, an authorized driver's permission to use the car, and, according to the police, was driving it earlier that day. (Tr. at 66-67.) Therefore, Defendant has standing to contest the seizure and searches of the car.

### 2. The Searches of the Car were Legal

The Court now turns to the critical question of whether the police unlawfully impounded the vehicle. Resolving this issue is determinative of the legality of the subsequent searches. *See United States v. Rodriguez-Morales*, 929 F.2d 780, 788 (1st Cir. 1991).

The police seized the rental car as per the request of Kulp, the owner of the vehicle. Kulp informed the police that Defendant was an unauthorized driver. The police did not yet know that Defendant had permission to use the car. Moreover, there is no evidence that the authorized drivers had any way of knowing where the car was or that they had any way to retrieve the car.

Law enforcement can clearly impound a vehicle in accordance with municipal or procedural regulations. *See Colorado v. Bertine*, 479 U.S. 374 (1987). For example, in their role as community caretakers police can impound vehicles if necessary to maintain traffic flow, protect public safety, and ensure that parking rules are followed. *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976). Of course, the key issue in all cases implicating the Fourth Amendment is the reasonableness of police conduct. Therefore, the relevant inquiry is whether the decision by the police to impound the Camry was reasonable. *See Michigan v. Summers*, 452 U.S. 692, 700 n.12 (1981); *United States v. Coccia*, 446 U.S. 233, 239 (1st Cir. 2006); *Rodriguez-Morales*, 929 F.2d at 785.

The Court finds that the police acted reasonably in seizing the car. The rental company specifically asked the police to impound the Camry. Additionally, while there is no evidence that

the car was parked illegally or was creating a traffic hazard, there was also no reason to believe that the authorized drivers would have been able to locate the car and/or move it from the public street at any time in the near future. *United States v. Frank*, 864 F.2d 992, 1001 (3d Cir. 1988) (permissible to impound rental car parked in public lot adjacent to motel). Faced with a request from the owner of the car and recognizing that the police likely had the only key, it was reasonable for the police to honor the rental company's request and impound the Camry.

Once the car was legally impounded, the police had the right to inventory its contents. *See Opperman*, 428 U.S. at 369. Defendant's argument that the decision to inventory the car was motivated by investigatory desires does not alter this inquiry. "The mere fact that an inventory search may also have had an investigatory purpose does not . . . invalidate it." *Id.* (*citing United States v. Orozco*, 715 F.2d 158, 161 (5th Cir. 1983)).

Accordingly, the car was legally impounded, and the police were permitted to conduct the inventory search that revealed the partially disassembled gun. Furthermore, in light of that gun and the drug dog's alert to the car, a substantial basis exists to support the search warrant obtained for the car. *See Rodriguez-Morales*, 929 F.2d at 788. Therefore, the evidence was properly collected from the car, and the motion to suppress is denied.

**IV.   CONCLUSION**

Because Defendant lacks standing to contest the search of the house, and, in any case, there is a substantial basis to support the judicial officer's determination to issue the warrant, Defendant's motion to suppress the evidence found in the house is denied. Further, while Defendant has standing to challenge the seizure and searches of the car, the searches were legal because the decision to

impound the car was a reasonable one, the subsequent inventory search was permissible, and there is a substantial basis to support the judicial officer's determination to issue the warrant. Therefore, Defendant's motion to suppress the evidence found in the car is denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | No. 06-23 |
| SHAMONE KENNEDY | : | |

**ORDER**

**AND NOW**, this **15th** day of **June**, **2007**, upon consideration of Defendant's Motion to Suppress, the Government's Response, the Defendant's Reply, the Government's Rebuttal, the evidence presented during the suppression hearing, and for the foregoing reasons, it is hereby **ORDERED** that Defendant's motion (Document No. 35) is **DENIED**.

BY THE COURT:

_____
**Berle M. Schiller, J.**